IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 01-cv-02299-PSF-BNB

F. DAVID SLUSHER

    Plaintiff,

v.

JOHN W. SUTHERS,
JOSEPH T. McGARRY,
DONALD R. LAWSON,
FRANK E. RUYBALID,
EDD C. GILLESPIE,
JUDY JO BULLARD,
TEDDY LAMAR LAURENCE,
PHYLLIS P. GRISWOULD,
MR. DELAYNE TORNOWSKI,
JIM DAY,
TAMI WILLIAMS,
RICHARD E. HOWARD, and
TREVOR WILLIAMS,

    Defendants.

---

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE
## DATED JUNE 7, 2006

---

This matter comes before the Court on the Recommendation of the Magistrate Judge filed June 7, 2006 (Dkt. # 283), in which the Magistrate Judge recommends granting defendants' motion to dismiss (Dkt. # 233) and denying as moot defendants' motion for summary judgment (Dkt. # 231). Plaintiff filed his objection to the Recommendation on July 18, 2006 (Dkt. # 288) and simultaneously filed a motion for

leave to file a second amended complaint (Dkt. # 287). Defendants have not filed an objection to the Recommendation. The matter is ripe for determination.

**BACKGROUND**

Plaintiff F. David Slusher, an inmate at the Limon Correctional Facility filed his Amended Complaint on December 13, 2004, alleging three claims for relief denominated as Claims I, III and VI. By order entered January 20, 2005, the Magistrate Judge clarified that permission to file the amended complaint had only been granted as to Claims I and III, and therefore they were the only operative claims of the Amended Complaint. In his Objection, plaintiff states that he agrees that there are only two claims asserted in this matter (Dkt. # 288 at 2).

Claims I and III, which are pled jointly in the Amended Complaint, are captioned "medical claims" and allege violations of the Eighth Amendment arising from alleged deliberate indifference to plaintiff's medical needs (Amended Complaint at 4). Plaintiff alleges, essentially, that due to a diagnosed condition of "ulnar neuropathy" he suffers from sever pain in his left arm, shoulder, wrist, elbow and fingers (*Id.* at ¶¶ 1, 3). He alleges that in March 1999 he received a "prescription" for 800 milligrams of ibuprofen three times per day to treat his conditions (*id.* at ¶ 2) and subsequently in June 1999 a prescription for 400 milligrams dosages three times per day (*id.* at ¶¶ 4, 7). Plaintiff also alleges that in January 2000 a treating physician suggested that allowing plaintiff to purchase a "more supportive mattress" for his bed might avoid worsening of his medical condition (*id.* at ¶ 9).

Plaintiff alleges that his request for a more supportive mattress was denied by the Limon facility, but that in April 2000 he was provided with a "wedge pillow" which alleviated some of the pain but exacerbated other pain (*id.* at ¶ 10). He also alleges that in May 2000 his request for "routine renewal" of his prescription for ibuprofen was returned with a note stating that he would need to buy the medication from the canteen as the prison pharmacy would no longer supply it (*id.* at ¶ 11). Plaintiff alleges that when he received his canteen order in June 2000 he was provided with a number of Ibuprofen pills totally approximately 4000 milligrams for a week's supply, which he essentially asserts was insufficient to treat his condition given his "prescription" of 1200 milligrams per day (*id.* at ¶ 14).

In June 2000, a prison physician made a written request to Colorado Access, apparently an outside provider of medical supplies at the Limon facility, to provide an "eggcrate mattress" to plaintiff, but the request was denied by Colorado Access (*id.* at ¶ 17). Plaintiff alleges that he was advised by the doctor that his only remedy was to appeal through Colorado Access and not to file an administrative grievance (*id.* at ¶ 18). Plaintiff alleges that he did file an appeal but that it was either denied or not responded to (*id.* at ¶ 18). Plaintiff also alleges that he was told he would not be permitted to buy his own mattress (*id.* at ¶ 19). Plaintiff alleges that in April 2004 defendants provided him with a "second mattress" but it was "well worn" and not effective in relieving the "cause" of his neuropathy (*id.* at ¶ 20).

Plaintiff alleges that in March and April 2004, he wrote letters to Defendants Day and Estep, informing them of the of the facts and requesting relief, citing to Exhibits 30,

31 and 32 attached to his Amended Complaint, and that he filed grievances on the mattress issue that were responded to by defendants Johnson, Tornowski and Decesaro (*id.* at ¶¶ 21, 22).

Although plaintiff's Amended Complaint combines the series of events related to the different medical requests he does allege expressly that Defendants Bullard, Laurence, Griswould, Tornowski Day, Williams, Johnson and Estep "were each part of the LCF Management Team that has refused to provide the physician-ordered supportive mattress or allow me to purchase same, also Defendants O'Brien and Reilly." (*Id.* at ¶ 24).   He also alleges that Defendants Suther, McGarry and Lawson, along with Colorado Access, created the policies that led to the denial of his "prescribed, medically -necessary medications and mattress, for my serious medical needs" (*id.* at ¶ 25).  Finally, he alleges that all named defendants knew or reasonably should have known that their deliberate indifference to his medical needs was a violation of clearly established constitutional law (*id.* at ¶ 26).

**DEFENDANTS' MOTIONS**

On September 30, 2005, 16 of the 25 defendants listed on the caption of the Amended Complaint filed a Motion to Dismiss (Dkt. # 233) and a separate Motion for Summary Judgment (Dkt. # 232).[1]  The motion to dismiss urges dismissal of both of plaintiff's claims on the grounds that he failed to exhaust his administrative remedies as

---

[1] It appears that the other nine listed defendants were either not named as defendants to Claims I or III, or were never served.  In addition, by order entered December 13, 2004, Defendants Tami Williams, Edd Gillespie, and Richard Howard were dismissed from the case although their names still appear in the later-filed motions to dismiss.

to both Claims I and II as required by the Prison Reform Litigation Act ("PLRA"), 42 U.S.C. § 1997e(a). The motion for summary judgment argues that each defendant is protected form plaintiffs' claims by the doctrine of qualified immunity, either because plaintiff has failed to demonstrate the existence of a serious medical condition, or because he has failed to show that the named defendants had "knowledge" of his asserted condition.

## THE RECOMMENDATION OF THE MAGISTRATE JUDGE

As noted above, the Magistrate Judge recommended granting the motion to dismiss on the grounds that plaintiff failed to exhaust his administrative remedies, finding that although plaintiff filed administrative grievances relating to each of his claims, he failed in the grievances to name the particular person against whom he was grieving, nor did he name in the grievance the defendants against whom he subsequently filed Claims I and III of his Amended Complaint (Recommendation at 12-16). Having determined to recommend granting of the motion to dismiss, the Magistrate Judge did not reach the arguments raised in the motion for summary judgment.

For the reasons set forth below, the Court accepts, in part, and disagrees in part with the Recommendation of the Magistrate Judge as to the plaintiff's exhaustion of administrative remedies. However, even to the extent that plaintiff has exhausted his administrative remedies, the Court finds that plaintiff's claims for deliberate indifference are subject to summary judgment.

**ANALYSIS**

    **1. Defendants' Motion To Dismiss**

The crux of the analysis by the Magistrate Judge rests on his initial conclusion that plaintiff failed to exhaust his administrative remedies because "he did not name in his grievances many of the defendants that are named in this action." (Recommendation at 9). The Magistrate Judge acknowledged that the Tenth Circuit has not determined whether the PLRA requires an inmate to name each defendant in the grievance procedure in order to exhaust administrative remedies. But, relying on the decisions of other circuits, the Magistrate Judge apparently interpreted these cases to state that a grievance does not contain sufficient information if it does not specifically identify the individuals responsible for the alleged deprivation, and under such standard he found that plaintiff failed to exhaust his administrative remedies (*id.* at 11). However, at least one case relied on by the Magistrate Judge, *Brown v. Sikes,* 212 F.3d 1205, 1207 (11th Cir. 2000) expressly states that:

> The question before us is whether the § 1997e(a) exhaustion requirement always prohibits a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed. We think that it does not. Instead, we conclude that while § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that.

Moreover, in the case of *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001), a case where the court did find a failure to exhaust due to the plaintiffs not naming one of the defendants

6

in their grievance, the case involved an alleged use of excessive force and the court found lack of exhaustion against a particular prison guard stating that:

> The claim against Howard, however, is a separate claim, against a separate individual, premised on a separate and independent legal theory. Because Howard was not mentioned in the prisoners' grievances, [the correctional facility] did not know that the prisoners specifically had a grievance against him, so [the correctional facility] had no reason to pursue any claim or disciplinary action against Howard based on the prisoners' official complaints.

249 F.3d at 505. The claim asserted by plaintiff in the instant case is of a very different nature.

Rather than adopt a bright line test requiring every subsequently sued defendant be named in the grievance, as suggested by the Magistrate Judge, this Court has generally found a grievance to be adequate for purposes of administrative exhaustion when the grievance "alerts the prison to the nature of the wrong for which redress is sought," citing to *Stong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). *See e.g. Rainge-El v. Moschetti,* 2006 WL 18766332 *2 (D. Colo. 2006). *See also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). Under such a test, it is not necessarily required that the grievance identify every party to the alleged wrong, as long as it notifies the prison of the general nature of the wrong, and affords it of an opportunity to address the complaint internally. *See also Porter v. Nussle*, 534 U.S. 516, 525 (2002). Applying such an approach, each of the grievances relevant here must be examined separately.

7

### a. Claim I of Amended Complaint

As the Magistrate Judge correctly found, plaintiff's grievances regarding his claim for failure to obtain adequate pain medication (ibuprofen) are contained in Exhibit 12 to his Motion for Summary Judgment (Dkt. # 46), filed August 30, 2002. *See also* Amended Complaint at ¶ 15. The Magistrate Judge also found that plaintiff complied with the grievance process established by the Colorado Department of Corrections, which requires an initial informal attempt at resolution, followed by a three-step grievance process (Recommendation at 12-13). He found, however, that the three grievances filed by plaintiff did not name the individuals against whom the Magistrate Judge understood Claim I was asserted, namely Defendants Suthers, McGarry and Lawson.

The Magistrate Judge, relying on the allegations in Paragraph 25 at page 7 of the Amended Complaint, interpreted that paragraph to allege Claim I only against these three defendants because they are alleged in that paragraph to have created the health care directive and policies that resulted in plaintiff being denied his prescribed medically-necessary medication and mattress (Recommendation at 13). It is true that these three defendants are nowhere mentioned in the grievances filed by plaintiff and if they were the only defendants against whom plaintiff alleged his Eighth Amendment claim there may be a failure to exhaust. However, the Court does not read plaintiff's complaint to allege his claim for denial of his medication only against these three defendants. Rather, plaintiff has alleged that Defendants Griswould, Laurence, Bullard and Ruybalid did no investigation of his grievances, acquiesced in and approved of the

denial of his medications, and alleged that the medication was available from the inmate canteen (Amended Complaint at ¶ 15). He further averred that all named defendants knew or reasonable should have known that their deliberate indifference to his medical needs violate clearly established constitutional law (*id.* at 26).

In his informal resolution attempt dated May 30, 2000 (page 1 of Exhibit 12 to Plaintiff's Motion for Summary Judgment), plaintiff asserted that he submitted a "kite" requesting a refill of his prescribed pain medication which was denied with a suggestion that he purchase it from the canteen, that he has had to wait "two weeks" before he can get his medication, and the canteen would not sell sufficient quantities that have been prescribed. He asserted that this violated "clearly established law" on the basis that inmates are entitled to medication "without cost to inmate." His resolution attempt was responded to by Defendant Griswould, a registered nurse at the Limon facility, who wrote on June 8, 2000 that according to DOC policy, over-the-counter medications for chronic health problems are available at the canteen (Exhibit 12 to Plaintiff's Motion for Summary Judgment at 1).

Plaintiff filed his first-step grievance on June 20, 2000, complaining of the denial of his medication request stating that "you do so according to some mysterious 'DOC policy'" and asking "What would that policy be?" (*id*. at 2). This grievance was answered on June 21, 2000 by Defendant Laurance, who wrote in an attached memorandum that the DOC policy had been posted in each cell house for two weeks, that defendant could have purchased the medication before he ran out, and that he can

9

purchase other anti-inflammatory medications from the canteen where his request does not exceed "non-prescription quantities."  (*Id.* at 3).

On June 25, 2000, plaintiff filed his step II grievance stating that "Mr. Lawrence's response to my Step I grievance demonstrates not only his incompetence, but also his untruthfulness" and goes on to argue with the facts of whether or not a policy was posted and states that the memo from the Executive Director, which was posted, stated that "no medications which had been prescribed would be interrupted." (*Id.* at 4).  This grievance was answered on June 29, 2000 by Defendant Bullard, a registered nurse at the Limon facility, who wrote in an attached memorandum that "[t]here is no limit on Motrin purchases" and quoted from a memorandum issued by Defendant Dr. Joseph McGarry setting forth the availability of "[m]edically necessary medications" and "[n]on-prescription medications" (*id.* at 5).  The memorandum from Defendant Bullard concludes: "If Motrin is not effective for your pain, please make an appointment with a provider for further evaluations."  (*Id.*).

On July 9, 2000, plaintiff filed his step III grievance stating "[d]espite their protestations to the contrary, there IS a limit to purchases of motrin from the canteen. I have told them this over and over again.  But their deliberate indifference to this matter remains, and I remain in substantial pain."  (*Id.* at 6).  Plaintiff's step III grievance was denied by letter from Defendant Ruybalid dated December 15, 2000, essentially responding that plaintiff's refusal to pay for over-the-counter drugs he can afford to buy "does not constitute denial of adequate medical care."  (*Id.* at 7).  The letter concludes

with the statement: "I hereby certify that you have exhausted the grievance process this date, December 15, 2000" (*id.*).

The record also reflects that by letter dated May 31, 2000 plaintiff wrote to Defendant Suthers, then Executive Director of the Colorado Department of Corrections, citing to a memorandum issued by Suthers dated April 27, 2000, which plaintiff quotes as stating that "CDOC will continue to provide all medically necessary . . . pharmacy services dictated by physicians." (Exhibit 13 to Plaintiff's Motion for Summary Judgment at 1). Plaintiff contends in his letter to Suthers that "[t]he medical department at LCF has ignored the above part of your memo" and relates his complaint that he had been denied his "prescribed" quantities of ibuprofen (*id.*). By memorandum dated June 28, 2000, Defendant Bullard responded to plaintiff's letter to Defendant Suthers, stating that "over-the-counter-medication was made available for purchase through the canteen" and citing to the same memo from Defendant McGarry she had quoted in her June 29, 2000 response to plaintiff's step II grievance (*id.* at 2). The record also indicates that plaintiff sent a letter to Dr. McGarry dated May 31, 2000, virtually identical to the letter sent to Defendant Suthers, but apparently received no reply (Exhibit 14 to Plaintiff's Motion for Summary Judgment).

Based on these grievances and letters, it appears to the Court that plaintiff did exhaust his administrative remedies with respect to his claim relating to his pain medication, at least as to Defendants Griswould, Laurance, Bullard, Ruybalid and Suthers. While there is no indication that there is a substantive Eighth Amendment basis for plaintiff's claim, it is apparent that he is complaining about a purported denial

to allow him to acquire nonprescription medication which he claims to need for pain management. The above five named defendants were certainly put on notice of the nature of plaintiff's claim by his grievances.  The Court cannot find that plaintiff has failed to exhaust his administrative remedies as to his claim against these four defendants.

However, the Court finds no basis for holding that plaintiff exhausted his administrative remedies against any other named defendant in connection with his Claim I.  To the extent that Claim I asserts a claim against defendants other than Defendants Griswould, Laurance, Bullard, Ruybalid and Suthers, it is dismissed for lack of exhaustion of administrative remedies.

### b.  Claim III of Amended Complaint

The Magistrate Judge correctly found that plaintiff's grievances regarding his claim for failure to provide an adequate mattress are contained in Exhibit 29 to his Amended Complaint (Recommendation at 14).  The Magistrate Judge also found that although plaintiff did not file an informal grievance with respect to this issue, he did file Step I through Step III grievances (*id.* at 15).  He found, nonetheless, that the three grievances filed by plaintiff did not suffice to exhaust his administrative remedies because they "do not provide sufficient information to alert prison officials that his grievances were being wrongfully denied.  Nor do they provide sufficient information that defendants . . . Suthers, McGarry, and Lawson created a policy that led to the denial of the plaintiff's mattress in effort to save money for the prison." (*Id.* at 16).  As

with the grievances filed in connection with Claim I, the Court reviews the grievances filed by plaintiff with respect to the mattress request.

In his Step I grievance filed on or about March 31, 2004, plaintiff summarized the history of his pain disorder and his being provided with a supportive mattress which had worn out, ultimately requesting that the facility "provide me with a supportive mattress, or that I be allowed to purchase one." (Exhibit 29 to Amended Complaint at 1). Defendant Shane Johnson responded to plaintiff's grievance stating that the "Facility has directed to allow you a new mattress when available" but would not allow him "to purchase a mattress for your own use." (*Id.*).

On April 20, 2004, plaintiff filed his Step II grievance stating that he thanked Capt. Johnson for his polite reply, but that it was "inadequate" because his current mattress would be considered "new" by the facility standards, yet it is made of poor materials and replacing it with one of "like manufacture" would not resolve the problem at least for long. (*Id.* at 2). He requested that the facility provide a "supportive mattress capable of withstanding years of use, adequate to my serious medical needs." (*Id.*). Plaintiff's Step II grievance was answered by Defendant Tornowski on April 20, 2004 with a note stating "LCF will not purchase a 'supportive' mattress for you, if Medical determines you need a "supportive" mattress, they will purchase it." (*Id.*).

On April 25, 2004, plaintiff filed his Step III grievance repeating his assertion that the mattresses provided are inadequate, and stating that "passing of the buck between various divisions within LCF will NOT alleviate the responsibility of the parties refusing to grant relief" (*id.* at 3). Plaintiff requested "the immediate relief" ordered by the

doctors he cited, and requested "compensatory and punitive damages" for the pain he had suffered "from the deliberate indifference of those who have refuse me relief." (*Id.*).  It is not clear whether plaintiff ever received a response to his Step III grievance.

The record also reflects that by letter dated March 22, 2004, plaintiff wrote to Defendant Day, apparently an officer at the correctional facility involved in housing matters, relating his medical condition and reiterating the request made in his administrative grievances for a more supportive mattress (Exhibit 30 to Amended Complaint).  Plaintiff submitted a nearly identical letter on the same date to Defendant Estep, then the warden at Limon (Exhibit 31 to Amended Complaint).  In a memorandum dated April 2, 2004, Defendant Day responded to plaintiff's letter stating that items need to alleviate an inmate's medical condition "must be purchased and issued by Clinical Services" and that he did not "have the authority to issue any special mattress." (Exhibit 32 to Amended Complaint).  It does not appear that Defendant Estep ever responded to plaintiff's letter to him, but he was sent a copy of Day's response, as well as a follow up letter from plaintiff dated April 7, 2004 (Exhibit 31 to Amended Complaint at 2) in which plaintiff describes Day's response to him and states that he does not care which department "fixes the problem" and that the authority "rests with you."

Based on these grievances and letters, it appears to the Court that plaintiff did exhaust his administrative remedies with respect to his claim for a more supportive mattress in the sense that he "alerted the prison to the nature of the wrong for which redress was sought" and afforded it an opportunity to address the complaint internally.

However, it is not entirely clear against which defendant he has a claim for his allegations of deliberate indifference.

In his Amended Complaint, he alleges that Defendants Bullard, Laurence, Griswould, Tornowski, Day, Williams, Johnson and Estep "were part of the LCF Management Team that has refused to provide the physician-ordered supportive mattress or allow me to purchase same, also Defendants O'Brien and Reilly" (Amended Complaint at ¶ 24), and he also alleges that Defendants Suther, McGarry and Lawson, along with Colorado Access, created the policies that led to the denial of his "prescribed, medically -necessary medications and mattress, for my serious medical needs" (*id.* at ¶ 25). Yet there is no indication from the above discussed grievances, that any defendants other than Johnson, Tornowski, Day and Estep were involved in the denial of plaintiff's requests, or that the other defendants were aware of plaintiff's claim or were given an opportunity to address it. While the Court is not requiring that each individual be named in the administrative grievance, it is necessary for the plaintiff to show that the named defendants are at least involved in the alleged denial of constitutional rights.

In his response to Defendants' Motion for Summary Judgment, plaintiff sets forth the documentary evidence which he claims provides the basis for asserting that certain defendants had knowledge of his medical conditions sufficient to sustain a claim of deliberate indifference against them (*See* Plaintiff's Opposition to Motion for Summary Judgment at 12-18). As noted above, the Court agrees that documentation supports the involvement of Defendants Griswould, Laurance, Bullard, Ruybalid and Suthers as

15

to his claim for denied medication, and Defendants Johnson, Tornowski, Day and Estep as to his claim for a more supportive mattress.  Notably, however, as to defendants Williams, O'Brien, and Reilly plaintiff does not point to any document indicating their involvement with the alleged denial of medical treatment other than to cite to their alleged participation in the "LCF Management Team" and to cite to supervisory liability based on their positions (*id.* at 18-19).  The Court finds that such theory does not suffice to satisfy the requirement of administrative exhaustion against them.  In addition, the Court does not find that Defendants McGarry or Lawson were put on notice of the claims against them sufficient to satisfy the requirement of administrative exhaustion against them.  The Court also notes that although Defendant DeCesaro may have signed one of the administrative grievance responses, he has not been served and is not a party to this case.

In summary, the Court finds that plaintiff has satisfied the requirement of administrative exhaustion on Claim I against Defendants Griswould, Laurance, Bullard, Ruybalid and Suthers, and on Claim III as against Defendants Johnson, Tornowski, Day and Estep.  With respect to plaintiff's claims against those defendants the Court disagrees with the recommendation of the Magistrate Judge on the Motion to Dismiss.  However, plaintiff's claims against any other defendant listed in the Amended Complaint are dismissed for failure to exhaust administrative remedies.  Plaintiff appears to accept that his claims are only properly asserted against the above-referenced defendants as his tendered proposed Second Amended Complaint, filed

July 18, 2006, names only these defendants[2] and omits the other defendants (Dkt. # 287).

## 2. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that they are entitled to summary judgment on plaintiff's claims of deliberate indifference even if plaintiff has exhausted his administrative remedies. Although the Magistrate Judge denied this motion as moot in light of his ruling on the motion to dismiss, this Court finds that the motion for summary judgment should be granted. Remand of this motion to the Magistrate Judge is not necessary. The motion was fully briefed by the plaintiff and is ripe for decision.

In order for an inmate to state a valid claim for medical mistreatment under the Eight Amendment, the prisoner must allege acts sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court set forth a two-pronged inquiry, comprised of an objective and subjective component. Under the objective inquiry, the alleged deprivation must be objectively "sufficiently serious" to constitute a deprivation of constitutional dimension. *Id.* at 834. In addition, under the subjective inquiry, the prison official must have a "sufficiently culpable state of mind." *Id.* In describing the subjective component, the Supreme Court made clear a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

---

[2] The proposed Second Amended Complaint does not name Defendant Ruybalid, but as he was named in the First Amended Complaint and is a party to the case, this order applies to him.

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 839-40. The subjective component is akin to "recklessness in the criminal law," where, to act recklessly, a "person must 'consciously disregard' a substantial risk of serious harm." *Id.* at 839.

In the instant case, neither of plaintiff's claims meet the standards required to establish a claim for deliberate indifference to serious medical needs. First, in response to plaintiff's claim for denial of sufficient quantities of ibuprofen, the defendants have shown that they understood, and apparently correctly so, that ibuprofen or other non-steroidal anti-inflammatories can be purchased in sufficient quantities at the prison canteen. Alternatively, other over-the-counter pain relief medications can be procured (*See* Affidavit of Dr. Bloor, Exhibit 3 to Defendants' Motion for Summary Judgment at 1-2). Thus, even if plaintiff were correct that he was not able to purchase quantities sufficient to alleviate his discomfort, he has not demonstrated that any of the defendants as to his Claim I and against whom he has exhausted his administrative remedies, recklessly disregarded a substantial risk of harm to plaintiff if they believed that the ibuprofen, or other medication, could be procured at the prison canteen.

Second, as to his claim that he was denied a more supportive mattress, the record does not reflect that any properly sued defendant consciously disregarded plaintiff's requests. Rather, the record shows that the requests were duly referred to the prison's medical provider, Colorado Access, and it made the determination as to whether a mattress would be provided. Plaintiff apparently challenged the decision by

Colorado Access, but according to the Magistrate Judge that defendant was dismissed from the action on February 19, 2002 (Recommendation at 5 n.2). There is no indication in the record that a denial of the requested supportive mattress was made by any defendant with reckless disregard of a substantial risk of harm to plaintiff. Moreover, even if plaintiff could show that the named defendants rejected plaintiff's request for a more supportive mattress he would not be able to prevail against those defendants, for the courts have held that even a disagreement with the medical judgment of prison doctors, much less the administrators, concerning treatment does not support a claim of cruel and unusual punishment. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

Accordingly, because plaintiff has failed to demonstrate a conscious disregard of a substantial risk of serious harm to plaintiff resulting from the implementation of the DOC policy regarding purchase of over-the-counter medications, or the referral of the mattress request to Colorado Access, his remaining two claims are subject to a grant of summary judgment against him.

**CONCLUSION**

The Defendants' Motion to Dismiss (Dkt. # 233) is GRANTED in part and DENIED in part. It is denied as to Defendants Griswould, Laurance, Bullard, Ruybalid, Suthers, Johnson, Tornowski, Day and Estep, but granted as to all other defendants against whom plaintiff's Claims I and III are dismissed without prejudice for failure to exhaust administrative remedies.

The Defendants' Motion for Summary Judgment (Dkt. # 231) is GRANTED in favor of all remaining defendants, and plaintiff's Claims I and III are dismissed in their entirety. All other claims asserted in plaintiff's Amended Complaint have been dismissed, or are hereby dismissed, and the Clerk of the Court is directed to terminate this case.

Plaintiff's Motion for Leave to Amend Complaint (Dkt. # 287) is DENIED.

DATED: September 29, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge